EDWARDS v JOBLINSKI

Docket No. 46544. Submitted December 2, 1980, at Lansing.—Decided
   August 5, 1981.

Doreen Edwards Dwyer, her two sons, Gregory Paton and Chris-
   topher Edwards, and a friend of hers were involved in an
   automobile accident when the vehicle which she was driving
   was struck by a vehicle driven by Thomas R. Joblinski. The
   yield sign at the intersection facing the traffic in the direction
   Joblinski was travelling was bent. Christopher Edwards died
   immediately from injuries sustained in the collision. Gregory
   Paton sustained personal injuries as a result of the impact and
   retains scars on his face. Doreen Edwards Dwyer suffered cuts
   in the accident and presently complains of headaches and
   backaches. Doreen Edwards, now Dwyer, individually and as
   administratrix of the estate of Christopher Edwards, deceased,
   and as next friend of Gregory Paton filed suit in Washtenaw
   Circuit Court against Joblinski for negligent operation of his
   truck and the Board of County Road Commissioners for Wash-
   tenaw County for negligent maintenance of the yield sign. At
   the conclusion of the plaintiff's case, Roy J. Daniel, J., granted
   defendant road commission's motion for a directed verdict. The
   trial was stayed pending the plaintiff's application for emer-
   gency appeal to the Court of Appeals, which appeal was subse-
   quently granted. Thereafter the road commission was ordered

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 744.
[2] 57 Am Jur 2d, Negligence §§ 189, 438.
   Judicial adoption of comparative negligence doctrine as applicable
   retrospectively. 78 ALR3d 421.
[3] 7 Am Jur 2d, Automobile Insurance §§ 293, 298.
   Rights and liabilities under uninsured motorist coverage. 79 ALR2d
   1252.
[4] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 64, 72-74, 105,
   347, 348.
[5] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 254, 414, 816,
   820.
   8 Am Jur 2d, Automobiles and Highway Traffic § 1108.
   Liability for automobile accidents at intersection as affected by
   reliance upon or disregard of "yield" sign or signal. 2 ALR3d 275.

reinstated by the Court of Appeals. At the subsequent trial, the jury found the plaintiff 19.375% negligent, Joblinski 73.125% negligent, and defendant road commission 7.5% negligent. Judgment was granted, Roy J. Daniel, J., wherein the court ordered several liability as to the claim of plaintiff Doreen Edwards Dwyer and joint liability as to the claims of Gregory Paton and the estate of Christopher Edwards. The defendant road commission appeals, alleging that (1) the trial court's decision granting its motion for a directed verdict was correct and was erroneously overruled by the prior panel of the Court of Appeals and (2) the comparative negligence doctrine requires that a defendant be liable only to the extent of his own negligence and mandates the abrogation of joint and several liability among defendants whose proportionate fault has been adjudicated. On cross-appeal, plaintiff contends that reversible error resulted from the trial court's refusal to give her requested instructions regarding medical and funeral expenses as to both defendants and that the trial judge erred in his jury instruction on the duty of care of plaintiff Doreen Edwards Dwyer. *Held:*

1. Reconsideration of whether the trial court was correct in granting a directed verdict to the road commission is precluded by the law of the case doctrine that, where an appellate court has passed on a legal question and remanded the case to the court below for further proceedings, the legal question determined by the appellate court will not be differently determined in a subsequent appeal in the same case where the facts remain the same.

2. The trial judge should have imposed a joint and several verdict in favor of Dwyer, Gregory Paton, and the estate of Christopher Edwards against both defendants. The Legislature is best equipped to consider the economic consequences, the policy considerations, and the equities on both sides of whether the common-law doctrine of joint and several liability should be abrogated.

3. The trial court erred in not giving the plaintiff's requested jury instruction on the responsibility of both defendants for certain medical and funeral expenses.

4. The trial court erred in its jury instruction regarding the duty of care of the plaintiff. By failing to discuss the requisite duty of care for a driver proceeding on a through street and a driver's right to rely on a presumption that another driver, approaching a yield sign, will yield to oncoming traffic, the instructions placed an unfair burden on plaintiff Dwyer.

Reversed and remanded.

1. APPEAL — LAW OF THE CASE.

A legal question determined by an appellate court will not be differently determined in a subsequent appeal in the same case where the facts remain the same and where the appellate court had passed on the legal question and remanded the case to the court below for further proceedings.

2. NEGLIGENCE — JOINT AND SEVERAL LIABILITY — COMPARATIVE NEGLIGENCE.

It is not within the province of the Court of Appeals to relegate the common-law doctrine of joint and several liability under the new comparative negligence system.

3. NEGLIGENCE — UNINSURED MOTORISTS — STATUTES.

An uninsured motorist involved in an automobile accident may be sued for all economic loss as well as above-threshold non-economic loss (MCL 500.3135; MSA 24.13135).

4. HIGHWAYS — GOVERNMENT'S DUTY TO MAINTAIN — STATUTES.

Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel and any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency (MCL 691.1402; MSA 3.996[102]).

5. AUTOMOBILES — NEGLIGENCE — JURY INSTRUCTIONS — YIELD SIGNS.

A driver approaching an intersection known to be controlled by yield signs is required to use ordinary care, which does not require him to slacken his speed or to have his car under such control as to be able to stop at once and avoid collisions with persons who may illegally come into his path; a plaintiff in a negligence action is entitled to a jury instruction to that effect where the evidence indicates such circumstances.

*Bilakos & Hanlon,* for plaintiff.

*Joselyn, Rowe, Jamieson & Grinnan, P.C.* (by *William J. Liedel),* for the Board of County Road Commissioners of Washtenaw County.

Before: Danhof, C.J., and M. F. Cavanagh and MacKenzie, JJ.

MacKenzie, J. Defendant Washtenaw County Board of Road Commissioners (hereinafter "Road Commission") appeals as of right from a special jury verdict finding it 7.5% negligent and severally liable for damages suffered by plaintiff Doreen Edwards Dwyer and jointly and severally liable for injuries to Gregory Paton and injuries resulting in the death of Christopher Edwards. The parties were involved in a two-car collision between vehicles driven by defendant Joblinski and plaintiff Doreen Edwards Dwyer. Defendant Joblinski has not appealed. Plaintiff has filed a cross-appeal.

The trial testimony established that plaintiff, accompanied by a friend in the front passenger seat, and, in the back seat, plaintiff's sons, two-year-old Gregory Paton, and three-year-old Christopher Edwards, was driving south on Bunton Road in Washtenaw County at approximately 4 p.m. on June 28, 1976. She testified that while her vehicle was in the intersection of Bunton Road and Martz Road, it was struck by defendant Joblinski's vehicle which had been travelling east on Martz Road. Both roads are gravel, rural roads. At the intersection, Bunton Road is a through street while yield signs face Martz Road in both directions. Testimony was adduced that, on the day of the accident, as well as several days before, the yield sign facing east-bound traffic on Martz Road was bent. Conflicting testimony was given as to whether the sign could be read by persons in cars travelling east on Martz Road. The yield sign was posted approximately 500 feet before the intersection.

Christopher Edwards died immediately from injuries sustained in the collision. Gregory Paton

sustained personal injuries as a result of the impact and retains scars on his face. Doreen Edwards Dwyer suffered cuts in the accident. She also complains of headaches and backaches. Plaintiff sued defendant Joblinski for negligent operation of his truck and defendant Road Commission for negligent maintenance of the yield sign. At the conclusion of plaintiff's case, the trial judge granted defendant Road Commission's motion for a directed verdict. Trial was stayed pending plaintiff's application for emergency appeal, which was granted by this Court on May 4, 1979, and defendant Road Commission was ordered reinstated. The Road Commission sought and was denied leave to appeal to the Michigan Supreme Court.[1]

Trial resumed on May 7, 1979, and the case was submitted to the jury, which found plaintiff 19.375% negligent, defendant Joblinski 73.125% negligent, and defendant Road Commission 7.5% negligent. The jury further awarded damages of $16,500 to plaintiff Dwyer, individually, $12,437.50 on behalf of Gregory Paton, and $29,500 to the estate of Christopher Edwards. Following a hearing on the question of whether the judgment should provide for several as opposed to joint and several liability between defendants, the court issued an order providing for several liability as to the claim of plaintiff Dwyer and joint liability as to the claims of Gregory Paton and the estate of Christopher Edwards.

Defendant Road Commission initially argues that the trial court's decision granting its motion for a directed verdict was correct and was erroneously overruled by the prior panel of this Court. The identical issue was previously addressed and

[1] *Edwards v Joblinski*, Court of Appeals order of May 4, 1979, Docket No. 44879, *lv den* 407 Mich 867 (1979).

resolved by a prior panel of this Court in the interlocutory appeal herein. Where an appellate court has passed on a legal question and remanded the case to the court below for further proceedings, the legal question determined by the appellate court will not be differently determined in a subsequent appeal in the same case where the facts remain the same. *Allen v Michigan Bell Telephone Co,* 61 Mich App 62, 65; 232 NW2d 302 (1975). Reconsideration of this issue is, therefore, precluded by the law of the case doctrine.

The next issue is whether the judicial adoption of pure comparative negligence in Michigan, in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), mandates the abrogation of joint and several liability among defendants whose proportionate fault has been adjudicated.

Prior to the adoption of comparative negligence, it was unquestioned that, where the negligence of two or more persons concurred in producing a single indivisible injury, such persons were jointly and severally liable, even if there was no concert of action between them or despite whether it was possible to determine what portion of the injury was caused by each. See *Lindsay v Acme Cement Plaster Co,* 220 Mich 367, 376; 190 NW 275 (1922). Defendant Road Commission, however, argues that the comparative negligence doctrine requires that a defendant be liable only to the extent of his own negligence.

This argument was recently rejected by a panel of this Court in *Weeks v Feltner,* 99 Mich App 392, 395; 297 NW2d 678 (1980), reasoning that:

"This argument ignores the fact that the comparative negligence doctrine also seeks to assure fair and adequate compensation for injured plaintiffs. Unlike the concept of contributory negligence, it avoids unduly

penalizing a plaintiff for his own fault. While some unfairness exists when one defendant is held liable for the fault of his codefendants, this is equally true of cases where the plaintiff is not at fault. The acts of Albert Feltner were foreseeable by the other defendants, and there is nothing inherently inequitable in holding them liable for the resulting injury. The doctrine of comparative negligence does not mandate abandonment of joint and several liability. In fact, a majority of other jurisdictions considering the issue have retained joint and several liability. See Schwartz, Comparative Negligence, § 16.4, p 93 (1978 Supp)."

See also *Conkright v M E Boatman Co,* 496 F Supp 147 (WD Mich, 1980).

We recognize that, prior to *Placek,* one of the justifications for allowing joint and several liability among defendants was that plaintiff was precluded from recovering unless free from negligence. Thus, it seemed fair that an innocent plaintiff should be fully compensated even if it meant that one negligent defendant had to be responsible for the total loss to compensate for the insolvency of another negligent defendant. This is not the case under the pure comparative negligence system now the law in Michigan. Indeed, as the Road Commission points out, its own negligence (7.5%) was less than that of plaintiff Dwyer (19.375%).

Courts in jurisdictions retaining joint and several liability under various comparative negligence systems have attempted to rationalize this seeming inconsistency by finding the negligence of a defendant, because it caused plaintiff harm, more culpable than that of plaintiff, whose negligence only resulted in self-inflicted harm. Thus, defendant's negligence has been described as tortious, while plaintiff's is not. See *American Motorcycle Ass'n v Superior Court of Los Angeles County,* 20 Cal 3d 578; 146 Cal Rptr 182; 578 P2d 899 (1978), *Seattle*

*First National Bank v Shoreline Concrete Co,* 91 Wash 2d 230; 588 P2d 1308 (1978). In *Seattle First National Bank,* the Court further pointed out that cases still exist where plaintiffs are free from fault.

Notwithstanding, a minority trend in the direction of abrogating joint and several liability has been recognized. See Schwartz, Comparative Negligence, § 16.4, p 120 (1981 Cum Supp). There, the author notes that in at least five states where comparative negligence has been adopted by the Legislature, the statutes explicitly abolish joint and several liability. The Oklahoma Supreme Court, in *Laubach v Morgan,* 588 P2d 1071 (Okla, 1978), held that where a jury was able to apportion damages, several liability would apply. It should also be noted, however, that Oklahoma does not allow contribution among joint tortfeasors.

A novel approach to the problem was recommended by Justice Clark of the California Supreme Court, dissenting in *American Motorcycle Ass'n, supra.* Arguing that joint and several liability is unfair to a marginally negligent defendant and directly contradicts the philosophy behind the comparative negligence doctrine, Justice Clark favored abandoning joint liability in negligence cases except where the plaintiff is free from negligence. Citing the contributory negligence doctrine, previously the law in California (as well as in Michigan), Justice Clark further discarded the notion that public policy requires fully compensating a plaintiff at all costs. Assuming such a policy is warranted, Justice Clark proposed that its establishment be left to the Legislature, a body better equipped to study all the consequences. However, in the interim, Justice Clark suggested that if plaintiff is negligent, only a limited form of joint

and several liability be retained. Under this theory, "the loss attributable to the inability of one defendant to respond in damages should be apportioned between the negligent plaintiff and the solvent negligent defendant in relation to their [own] fault". Justice Clark explained his proposal as follows:

"Returning to my 30-60-10 illustration, if the 60 percent at fault defendant is unable to respond, the 30 percent at fault plaintiff should be permitted to recover 25 percent of the entire loss from the 10 percent at fault solvent defendant based on the 3 to 1 ratio of fault between them. (The solvent defendant would have added to his 10 percent liability one-fourth of the 60 percent or 15 percent to reach the 25 percent figure.) To the extent that anything is recovered from the 60 percent at fault defendant, the money should be apportioned on the basis of the 3 to 1 ratio. The system is based on simple mechanical calculations from the jury findings." 20 Cal 3d 578, 614.

Cognizant of the inequities of placing the entire loss attributable to an insolvent defendant solely on the negligent plaintiff or solely on the solvent negligent defendant, we, nevertheless, do not believe it is within the province of this Court to relegate the common-law doctrine of joint and several liability. We agree with Justice Clark that the Legislature is best equipped to consider the economic consequences, the policy considerations, and the equities on both sides. Thus, we hold that the trial judge should have imposed a joint and several verdict in favor of plaintiff Dwyer, Gregory Paton, and the estate of Christopher Edwards against both defendants.

The next issue is whether reversible error resulted as to both defendants from the trial court's refusal to give plaintiff's requested (written) in-

structions on medical and funeral expenses. The record indicates that plaintiffs preserved this issue by objection. See *Kirby v Larson,* 400 Mich 585, 604; 256 NW2d 400 (1977).

Initially, we reject the Road Commission's contention that the fact that defendant Joblinski has not chosen to appeal bars plaintiff from asserting this error in a cross-appeal. See GCR 1963, 807.3, under which plaintiff's cross-appeal operates against defendant Joblinski even though he chose not to respond.

Concerning defendant Joblinski, the Michigan Supreme Court, considering eight cases consolidated on appeal involving uninsured motorists, *Bradley v Mid-Century Ins Co,* 409 Mich 1, 62; 294 NW2d 141 (1980), held that "[i]f a motorist is uninsured he may be sued for all economic loss as well as above-threshold non-economic loss". MCL 500.3135; MSA 24.13135. Since the requested instruction pertained to economic losses suffered by plaintiffs, it was error to refuse to give it as to defendant Joblinski.

The instruction also should have been given with respect to defendant Road Commission, since its liability did not arise from the ownership, maintenance, or use of a vehicle under the no-fault act, MCL 500.3105; MSA 24.13105. See *Liberty Mutual Ins Co v Allied Truck Equipment Co,* 103 Mich App 33; 302 NW2d 588 (1981), *Ricciuti v Detroit Automobile Inter-Ins Exchange,* 101 Mich App 683; 300 NW2d 681 (1980). Rather, defendant Road Commission's liability stems from MCL 691.1402; MSA 3.996(102), providing as follows:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or

damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21, chapter 4 of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Compiled Laws of 1948. The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel. No action shall be brought against the state under this section except for injury or loss suffered on or after July 1, 1965. Any judgment against the state based on a claim arising under this section from acts or commissions of the state highway department shall be payable only from restricted funds appropriated to the state highway department or funds provided by its insurer."

Therefore, the Road Commission was also liable to plaintiff for economic loss and the trial judge should have given plaintiff's requested instructions on medical and funeral expenses.

Finally, plaintiff argues that the trial judge erred in giving the following instruction on the duty of care of plaintiff Doreen Edwards Dwyer:

"Now I would further instruct you, ladies and gentlemen, that ordinary care, that is, the care to be used by a reasonable person, does not require a driver to slacken speed or to have the car under such control to stop at once and avoid accidents with persons who may illegally come into their path. Ordinary care, however, does require a driver to keep such look-out ahead and to the sides and down intersecting roads, as a reason-

able, prudent person would do in order to discover possible dangers and he must act carefully upon the existing conditions."

Plaintiff Dwyer's requested instruction on this question stated, in pertinent part:

"In this case plaintiffs have represented testimony that plaintiff, Doreen Dwyer, was driving south on Bunton Road when she approached the intersection of Martz Road which was known to her to be controlled by a 'yield sign', the exercise of ordinary care on her part does not require her to slacken her speed or to have her car under such control that she may stop at once and avoid collisions with persons who may illegally come into her path. Ordinary care, however, does require her to keep such lookout ahead and to the sides and down intersecting roads as a reasonably prudent person would do in order to discover possible danger and must act carefully upon the existing conditions."

Plaintiff Dwyer's attorney made the following objection to the instruction as given:

"I also feel that the court did not specifically state that the duty of the plaintiff on a through highway was to be as stated by the court, but it did not refer to the fact that this was the duty of a person who knows they are on a through highway and that the side streets are being controlled by yield signs, and the way the court gave the duty, it could apply to any of the parties in this case, and that is not the case in this instance. There is only one party that is entitled to that instruction, and it is the plaintiffs, who were on a through highway."

On appeal, plaintiff Dwyer argues that failure to indicate how this instruction might be applied in the instant case prejudiced the rights of plaintiff-driver. While the objection made was not a model

of clarity, it was sufficiently specific to preserve this instructional issue for review under GCR 1963, 516.2.

By failing to discuss the requisite duty of care for a driver proceeding on a through street and a driver's right to rely on a presumption that another driver, approaching a yield sign, will yield to oncoming traffic, the instructions placed an unfair burden on plaintiff Dwyer. See *Placek v Sterling Heights, supra,* 669; *Buchholtz v Deitel,* 59 Mich App 349, 352; 229 NW2d 448 (1975).

While a favored driver is, in fact, required to exercise reasonable care including being alert to potential dangers, *Placek, supra,* 672, the jury lacked the benefit of the presumption regarding yield signs when it was deliberating. This was error that mandates a new trial. *Placek, supra.*

Reversed and remanded for a new trial.