GROF v STATE OF MICHIGAN

Docket No. 57043. Submitted March 1, 1983, at Lansing.—Decided
June 8, 1983.

On September 14, 1975, plaintiff Donald C. Smith was operating a
Ford van in an easterly direction on state highway M-50. In the
van, also, were Sharon Smith, wife of Donald C. Smith, their
children, Tracie and Stacie Smith, and Mrs. Smith's parents,
John Grof, Jr., and his wife, Ellen Grof. At the same time and
place, Dorothy Wyatt was operating an automobile in a north-
erly direction on M-52. Both vehicles approached the intersec-
tion at approximately 55 miles per hour and entered the
intersection without slackening speed, whereupon the front of
the Wyatt vehicle struck the right side of the Smith vehicle.
All six persons in plaintiffs' vehicle were injured as a result of
the collision, and Sharon Smith, Tracie Smith and John Grof,
Jr., died as a result of their injuries. The regulatory and
warning control devices in place at the intersection on the day
of the accident were placed there by defendant in March of
1969 and remained unchanged in the interim. They were
visible, in good repair, and were in compliance as to type and
location with the Michigan Manual for Uniform Traffic Control
Devices. On northbound M-52 were two stop ahead signs
equipped with yellow flashing lights, a stop sign on the shoul-

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 344, 372.
57 Am Jur 2d, Municipal, School, and State Tort Liability § 133.
Liability and suability, in negligence action, of state highway, toll
road, or turnpike authority. 62 ALR2d 1222.
[2] 5 Am Jur 2d, Appeal and Error § 839 et seq.
[3] 57 Am Jur 2d, Negligence §§ 127, 164, 200.
[4] 57 Am Jur 2d, Negligence §§ 192, 199 et seq.
[5] 18 Am Jur 2d, Contribution § 52.
57 Am Jur 2d, Negligence §§ 186, 189.
[6] 7 Am Jur 2d, Automobile Insurance §§ 348, 349.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.
[7] 7 Am Jur 2d, Automobile Insurance §§ 327, 328.
Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from independent collateral sources. 10 ALR4th 996.
[8] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 83,
84.

der of the road, and a flashing red beacon and case illuminated stop sign suspended over the center of the intersection. On eastbound M-50 were two junction signs and a route direction sign on the shoulder of the road and a yellow flashing beacon suspended over the center of the intersection. The entire intersection was open and visible for 500 to 600 feet to northbound and eastbound traffic. From 1969 until the date of the accident, the intersection of M-50 and M-52 sustained a high incidence of severe-injury accidents, particularly "right angle" accidents. Defendant State of Michigan, through its traffic and safety engineers, had actual knowledge of the rate, type and severity of the accidents and injuries at this intersection and, after thorough investigation, concluded that the accident and injury rates at this intersection were unacceptably high, that the traffic control devices in place were not adequately performing their intended function of safely guiding traffic through the intersection and that more effective traffic control devices were necessary in order to reduce the accident rate to acceptable levels. To that end a work authorization calling for installation of four-way stop signs at the intersection was prepared and approved on December 23, 1974. By April 3, 1975, a traffic control determination, which completed the legal requirements for the work authorization, had been executed by defendant and by the Michigan Department of State Police. In June of 1975, the work authorization was reissued with a minor modification. Work commenced in December of 1975, approximately three months after the accident, and was completed in three weeks thereafter at a cost of $6,538. The state gave no reason for the delay in construction.

Ellen J. Grof, individually and as the administratrix of the estate of John Grof, Jr., and Donald O. Smith, individually, as next friend of Stacie L. Smith, and as administrator of the estates of Sharon L. and Tracie L. Smith, brought an action in the Court of Claims against the State of Michigan and an action in the Wayne Circuit Court against Ford Motor Company. The actions were consolidated in the Court of Claims and the action against Ford was settled. The court, James Montante, J., rendered a lengthy written opinion that judgment should be granted for plaintiffs a few days before Judge Montante's retirement. Lucille A. Watts, J., subsequently granted judgment for plaintiffs. The state appealed. *Held:*

1. A highway authority is liable for injuries caused by defective highways under its care. A defect can result not only from failure to maintain the highway in good repair but also from failure to keep it in a condition reasonably safe and convenient

for public travel. The trial court did not err in holding that the intersection was not safe for public travel as a matter of law.

2. A finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. The trial court's determination that the state negligently failed to timely implement its June, 1975, work order after it had determined that the existing control devices were inadequate was not clearly erroneous.

3. To make negligence the proximate cause of an injury, the injury must be the natural and probable consequence of a negligent act or omission, which, under the circumstances, an ordinary prudent person ought reasonably to have foreseen might probably occur as the result of his negligent act. The court did not err in finding that defendant's failure to timely implement the four-way stop signing previously ordered was a proximate cause of plaintiffs' injuries and damage.

4. The liability of joint tortfeasors who have not made a settlement must be reduced by the amount of any settlement where a settlement is reached with any person liable in tort for the same injury; the liability may not be determined by calculating the proportionate liability of the settling tortfeasor and deducting that amount from the total liability. The court properly refused to apportion the negligence among tortfeasors who were not parties.

5. Amounts received from a no-fault insurer should not be set off against a judgment obtained against a highway authority for failure to maintain a highway in a safe condition. The court properly refused to set off these amounts.

6. The liability of a governmental agency for failure to maintain a highway within its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel is not expressly limited to damages for bodily injury and property damage directly resulting from the failure. The language of the statute allows a construction which permits recovery for consequential damages which arise out of the wrongful death of a person injured because of the failure and are expressly compensable under the wrongful death act, including damages for the loss of society and companionship of the decedent.

Affirmed.

1. HIGHWAYS — TORTS — DEFECTS — STATUTES.

A highway authority is liable for injuries caused by defective highways under its care; a defect can result not only from

failure to maintain the highway in good repair but also from failure to keep it in a condition reasonably safe and convenient for public travel (MCL 691.1402; MSA 2.996[102]).

2. APPEAL — FINDINGS OF FACT — BENCH TRIAL — COURT RULES.

A finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

3. NEGLIGENCE — PROXIMATE CAUSE.

To make negligence the proximate cause of an injury, the injury must be the natural and probable consequence of a negligent act or omission, which, under the circumstances, an ordinary prudent person ought reasonably to have foreseen might probably occur as the result of his negligent act.

4. NEGLIGENCE — INTERVENING ACT.

Generally, the effect of an intervening negligent act is tested by determining whether or not it was such as might reasonably have been foreseen as a consequence of the claimed negligence of the original actor.

5. NEGLIGENCE — JOINT TORTFEASORS — CONTRIBUTION — SETTLEMENT.

The liability of joint tortfeasors who have not made a settlement must be reduced by the amount of any settlement where a settlement is reached with any person liable in tort for the same injury; the liability may not be determined by calculating the proportionate liability of the settling tortfeasor and deducting that amount from the total liability (MCL 600.2925d; MSA 27A.2925[4]).

6. TORTS — NO-FAULT INSURANCE — ACTIONS.

The tort liability abolished by the no-fault insurance act is only such liability as arises out of the defendant's ownership, maintenance or use of a motor vehicle, not liability which arises out of other conduct.

7. TORTS — HIGHWAYS — NO-FAULT INSURANCE — SETOFF.

Amounts received from a no-fault insurer should not be set off against a judgment obtained against a highway authority for failure to maintain a highway in a safe condition.

8. HIGHWAYS — MAINTENANCE — NEGLIGENCE — WRONGFUL DEATH.

The liability of a governmental agency for failure to maintain a

highway within its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel is not expressly limited to damages for bodily injury and property damage directly resulting from the failure; the language of the statute allows a construction which permits recovery for consequential damages which arise out of the wrongful death of a person injured because of the failure and are expressly compensable under the wrongful death act, including damages for the loss of society and companionship of the decedent (MCL 600.2922(1), 691.1402; MSA 27A.2922(1), 3.996[102]).

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Jack R. Sullivan),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl K. Carlsen,* Assistant Attorney General, and *Thomas J. O'Toole,* Special Assistant Attorney General, for the State of Michigan.

Before: R. B. BURNS, P.J., and BRONSON and R. E. ROBINSON,* JJ.

PER CURIAM. Defendant, State of Michigan, in the capacity of the Department of State Highways, appeals from a judgment for plaintiffs entered in the Court of Claims. A companion case against Ford Motor Company was consolidated with the Court of Claims action but settled without trial.

The following statement of facts we have adopted from the trial court's findings which are supported by the record.

On September 14, 1975, plaintiff Donald C. Smith was operating a 1970 Ford van in an easterly direction on state highway M-50. In the van, also, were Sharon Smith, wife of Donald C. Smith, their children, Tracie and Stacie Smith, and Mrs.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Smith's parents, John Grof, Jr., and his wife, Ellen Grof.

At the same time and place, Dorothy Wyatt was operating a 1970 Mercury automobile in a northerly direction on M-52.

Both vehicles approached the intersection at approximately 55 miles per hour and entered the intersection without slackening speed, whereupon the front of the Wyatt vehicle struck the right side of the Smith vehicle. All six persons in plaintiffs' vehicle were injured as a result of the collision, and Sharon Smith, Tracie Smith and John Grof, Jr., died as a result of their injuries.

The regulatory and warning control devices in place at the intersection on the day of the accident were placed there by defendant in March of 1969 and remained unchanged in the interim. They were visible, in good repair, and were in compliance as to type and location with the Michigan Manual for Uniform Traffic Control Devices.

On northbound M-52 were two stop ahead signs equipped with yellow flashing lights, a stop sign on the shoulder of the road, and a flashing red beacon and case illuminated stop sign suspended over the center of the intersection. On eastbound M-50 were two junction signs and a route direction sign on the shoulder of the road and a yellow flashing beacon suspended over the center of the intersection. The entire intersection was open and visible for 500 to 600 feet to northbound and eastbound traffic.

From 1969 until the date of the accident, the intersection of M-50 and M-52 sustained a high incidence of severe injury accidents, particularly "right angle" accidents. Defendant, through its traffic and safety engineers, had actual knowledge of the rate, type and severity of the accidents and

injuries at this intersection and, after thorough investigation, concluded that the accident and injury rates at this intersection were unacceptably high, that the traffic control devices in place were not adequately performing their intended function of safely guiding traffic through the intersection and that more effective traffic control devices were necessary in order to reduce the accident rate to acceptable levels. To that end a work authorization calling for installation of four-way stop signs at the intersection was prepared and approved on December 23, 1974. By April 3, 1975, a traffic control determination, which completed the legal requirements for the work authorization, had been executed by defendant and by the Michigan Department of State Police. In June of 1975, the work authorization was reissued with a minor modifiction. Work commenced in December of 1975, approximately three months after the accident and was completed in three weeks thereafter at a cost of $6,538. Defendant gave no reason for the delay in construction.

Dorothy Wyatt was convicted of negligent homicide in Lenawee County Circuit Court and her insurer entered into an out-of-court settlement with plaintiffs.

This appeal raises a variety of issues. Additional facts will be set forth as necessary in addressing each issue.

# I

## WAS THE INTERSECTION OF M-50 AND M-52, AS A MATTER OF LAW, REASONABLY SAFE AND CONVENIENT FOR PUBLIC TRAVEL ON SEPTEMBER 14, 1975?

MCL 691.1402; MSA 3.996(102) defines the state's duty in this regard:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover damages suffered by him from such governmental agency."

This duty is subject to the notice limitation imposed by MCL 691.1403; MSA 3.996(103):

"No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of thirty days or longer before the injury took place."

The statutory duty imposed upon defendant includes the duty to post signs at points of special danger to motorists, *Mullins v Wayne County,* 16 Mich App 365; 168 NW2d 246 (1969), including intersections, and specifically signs sufficient to give adequate warning of the danger. *Tuttle v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976).

There is no dispute that everything the defendant was responsible for at this intersection was in good repair. Defendant correctly argues that it is only liable for injuries caused by defective highways. However, *Mullins v Wayne County, supra,* citing *Joslyn v Detroit,* 74 Mich 458; 42 NW 50 (1889), and *Malloy v Walker Twp,* 77 Mich 448; 43

NW 1012 (1889), make it clear that a defect can result not only from failure of the department to "maintain the highway in good repair", but to keep it "in a condition reasonably safe and convenient for public travel". *Mullins* and *Tuttle v Highway Dep't, supra,* extend this latter obligation to proper signing.

The trial judge correctly found that this intersection, as a matter of law, was not safe for public travel.

## II

### WAS THE TRIAL COURT'S DETERMINATION THAT THE DEFENDANT NEGLIGENTLY FAILED TO TIMELY IMPLEMENT ITS JUNE 1975 WORK ORDER CLEARLY ERRONEOUS?

The standard for appellate review of the factual findings of a trial court sitting without a jury is delineated in GCR 1963, 517.1:

"Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it."

More specific meaning was given to this rule by the *Tuttle* Court, *supra,* which examined the United States Supreme Court's analysis of comparable Rule 52(a) of the Federal Rules of Civil Procedure and concluded that:

"* * * [a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." 397 Mich 46.

Defendant's own records indicate that 16 months before the accident, the defendant had determined that the existing signs were contributing to an unacceptably high level of accidents at this intersection, many of them of the right angle kind, such as this one. At that time, defendant ordered the erection of four-way stops as a recognized means of reducing the accident level, and by June, 1975, three months before the accident, the final work authorization to implement its order had been issued by defendant. No explanation was offered by defendant for its failure to implement its own work authorization until after the accident.

We do not decide whether the defendant's exposure to liability might have been different in the absence of such a determination by it or in the absence of such a work authorization since under somewhat similar facts in *Tuttle, supra,* we are beyond that:

"We need not reach the question of whether defendant negligently exercised its 'discretion' regarding traffic control device installation at the intersection as of the date it was opened. We do predicate clear error in the finding that defendant was not negligent when the undisputed facts show that defendant failed to carry out its own work orders after defendant had determined that the existing stop control was not sufficiently noticeable. One full working week elapsed between the date that defendant itself first determined that additional safeguards were needed and the date of the accident." 397 Mich 52.

The trial court's finding that the defendant was negligent in failing to carry out its own work order after it had determined that the existing control devices were not adequately controlling traffic was not clearly erroneous.

## III

### DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ADMITTING TESTIMONY RELATING TO PROPOSED SIGNING OR SIGNALIZATION OTHER THAN THAT PRESENT AT THE INTERSECTION ON SEPTEMBER 14, 1975?

This question has been answered adversely to defendant by another panel of this Court writing in *Hall v Dep't of State Highways,* 109 Mich App 592; 311 NW2d 813 (1981). We agree with the holding in *Hall.* Nor is admissibility in the case controlled by MRE 407.

## IV

### WAS THE TRIAL COURT'S FACTUAL FINDING THAT DEFENDANT'S FAILURE TO IMPLEMENT, WITHIN A REASONABLE PERIOD OF TIME, THE FOUR-WAY STOP SIGNING WHICH HAD BEEN PREVIOUSLY ORDERED WAS A PROXIMATE CAUSE OF THE PLAINTIFFS' INJURIES AND DAMAGE CLEARLY ERRONEOUS?

There may be more than one proximate cause, *Caldwell v Fox,* 394 Mich 401; 231 NW2d 46 (1975), and defendant's negligence need not be the sole cause in order for plaintiffs to recover. *Dillon v Tamminga #2,* 64 Mich App 305; 236 NW2d 718 (1975). Such proximate cause exists, however, only if plaintiffs' injuries are the "natural and probable consequence of a negligent act or omission, which, under the circumstances, an ordinary prudent person ought reasonably to have foreseen might probably occur as the result of his negligent act". *Nielsen v Henry H Stevens, Inc,* 368 Mich 216, 220-221; 118 NW2d 397 (1962).

Based on the evidence, the trial judge found that defendant's sign and signal system at this intersec-

tion was not as effective in controlling the accident rate as would be a four-way stop system, that it ordered the installation of a four-way stop system, that it negligently failed to timely implement its own order, and that as a proximate result of such negligent delay, plaintiffs were injured.

Writers differ as to whether foreseeability is an element of proximate cause absent any intervening force between defendant's negligence and plaintiffs' injuries. Where, however, as here defendant asserts the negligence of the drivers of both vehicles as intervening forces which eliminate this defendant's negligence as a proximate cause of plaintiffs' injuries, foreseeability becomes a critical element.

"Generally, the effect of an intervening negligent act is tested by determining whether or not it was such as might reasonably have been foreseen as a consequence of the claimed negligence of the original actor." *Comstock v General Motors Corp,* 358 Mich 163, 178; 99 NW2d 627 (1959).

Again based on the evidence, the trial judge, after finding that both drivers were negligent, found that the right angle type accident which occurred here was of the type which had, in the opinion of defendant's own traffic and safety engineers, reached a level which required a four-way stop in order to protect vehicle operators from their own and others' negligence; that such future accidents resulting from driver error were reasonably forseeable by defendant as a natural and probable result of defendant's negligent failure to act upon its perception within a reasonable time.

It can be argued that this case goes beyond

*Tuttle, supra,* where the victim driver was free from negligence. But see, *Hall v Dep't of State Highways, supra.*

The trial court's finding of proximate cause was not clearly erroneous.

## V

### SHOULD THE TRIAL COURT HAVE APPORTIONED LIABILITY AMONG NONPRESENT TORTFEASORS IN ADDITION TO THE PARTIES?

The trial court found Donald Smith to be 15% negligent and reduced his award proportionately. It also reduced all awards by the amounts received in settlement from Ford Motor Company ($200,-000) and from Dorothy Wyatt ($50,000).

Defendant urges that the trial court should have determined the percentage of negligence of tortfeasors not participating in the trial, specifically that of Dorothy Wyatt, and should have reduced plaintiffs' awards by that percentage instead of by her $50,000 settlement. Defendant cites the adoption by our Supreme Court of the doctrine of "pure" comparative negligence in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), as mandating the result urged by defendant.

The question of the impact of *Placek* on the method of contributions among joint tortfeasors, which has been working its way through the appellate process via several cases, has been effectively answered by the recent ruling in *Mayhew v Berrien County Road Comm,* 414 Mich 399; 326 NW2d 366 (1982).

The *Mayhew* Court, while recognizing that the Legislature, by its recent amendment (1982 PA

147)[1] to MCL 600.2925b; MSA 27A.2925(2), has legislatively affirmed the doctrine of comparative fault in contribution which was judicially imposed by *Placek,* nevertheless opined that, by not at the same time amending the contribution-release statute, MCL 600.2925d; MSA 27A.2925(4),[2] the Legislature was sending a clear signal to the Court that it intended subd 2925d to remain viable rather than be superseded by inference by *Placek.*

The trial court correctly refused to apportion negligence to nonpresent tortfeasors.

## VI

DID THE TRIAL COURT ERR IN REFUSING TO REDUCE PLAINTIFFS' DAMAGES BY THE AMOUNTS RECEIVED BY PLAINTIFFS THROUGH THEIR NO-FAULT INSURANCE?

Defendant relies on that part of the no-fault insurance act embodied in MCL 500.3109(1); MSA 24.13109(1):

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury",

in reasoning that those funeral and medical expenses which have been paid to or for plaintiffs, or which will be paid to or for them in the future, by

---

[1] Prior to 1982 PA 147, MCL 600.2925b; MSA 27A.2925(2) provided:

"(a) Their relative degrees of fault *shall not* be considered." (Emphasis supplied.)

1982 PA 147 amended subsection (a) above to read:

"(a) Their relative degrees of fault *shall* be considered." (Emphasis supplied.)

[2] MCL 600.2925(d); MSA 27A.2925(4):

"When a release * * * is given in good faith * * * [i]t reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release * * * or to the extent of the amount of the consideration paid for it, whichever amount is the greater."

their no-fault carriers, should not have been allowed by the trial court as elements of damages. Defendant reasons that this is a double recovery since the insurance carrier has no right of subrogation under the no-fault act.

We disagree. Justice LEVIN, writing in *Citizens Ins Co of America v Tuttle,* 411 Mich 536, 542; 309 NW2d 174 (1981), points out that:

"The tort liability abolished by the no-fault act is only such liability as arises out of the defendants' ownership, maintenance or use of a motor vehicle, not liability which arises out of other conduct * * *."

Defendant's liability in this case does not arise out of its ownership, maintenance or use of a motor vehicle and the no-fault act is not applicable.

See also *Edwards v Joblinski,* 108 Mich App 371; 310 NW2d 385 (1981), which held that an action against a county road commission for its failure to repair a yield sign did not come within the purview of the no-fault act and, thus, plaintiffs were entitled to an instruction concerning recovery of medical and funeral expenses.

## VII

DID THE TRIAL COURT PROPERLY DETERMINE THAT DERIVATIVE DAMAGES FOR LOSS OF SOCIETY AND COMPANIONSHIP ARE PROPER ELEMENTS OF AN AWARD UNDER MCL 691.1402; MSA 3.996(102)?

Defendant reasons that this section of the highway act, which, by granting the right of action against the state for highway injuries, is a waiver of immunity in derogation of the common law, must be strictly construed, citing *Stremler v Dep't of State Highways,* 58 Mich App 620; 228 NW2d

492 (1975), and that, therefore, recovery is limited to the person who sustains bodily injury or property damage. MCL 691.1402; MSA 3.996(102).

Defendant's reasoning was recently rejected in *Endykiewicz v State Highway Comm,* 414 Mich 377; 324 NW2d 755 (1982), the Court holding that the portion of the highway act which waives the state's immunity for certain highway injuries merely put the state on an equal footing with other tortfeasors; that thereafter it is the wrongful death statute, MCL 600.2922(1); MSA 27A.2922(1), with its broader scope of recovery, which gives the survivors (plaintiffs here) their standing to sue and grants to them the right to recover for loss of society and companionship.

Affirmed. Costs to plaintiffs-appellees.