COMERICA BANK OF KALAMAZOO v DEPARTMENT OF
TRANSPORTATION

NEFF v DEPARTMENT OF TRANSPORTATION

Docket Nos. 87302, 87530. Submitted March 3, 1987, at Lansing.
Decided November 19, 1987. Leave to appeal denied, 430 Mich
883.

Franklin Charles Chandler and Richard W. Willis died as a result
of injuries sustained in a motor vehicle accident caused by the
failure of the driver of their vehicle to stop at a stop sign at the
intersection of M-40 and M-43 in Van Buren County. Comerica
Bank of Kalamazoo, as personal representative of the estate of
Chandler, and Mary Neff, as personal representative of the
estate of Willis, each brought an action in the Court of Claims
against the Department of Transportation, alleging that defen-
dant, by failing to install four-way stop signs at the intersec-
tion, had violated its duty to maintain the intersection in
reasonable repair and in a condition reasonably fit for travel.
The actions were consolidated and, after trial, the court, Pat-
rick H. McCauley, J., entered a judgment of no cause of action.
Plaintiffs appealed.

The Court of Appeals *held*:

The trial court did not err in concluding that defendant was
not negligent in failing to install four-way stop signs at the
intersection. The court properly determined that the decision of
whether to install such signs rested in the defendant's discre-
tion, that defendant had taken other steps to improve safety at
the intersection, that the smooth flow of traffic was a safety
factor, and that a four-way stop sign was not necessarily the

REFERENCES

Am Jur 2d, Appeal and Error § 819.

Am Jur 2d, Highways, Streets, and Bridges §§ 103 *et seq.*; 337 *et
seq.*

Supreme Court's views as to what constitutes factual issue under
"clearly erroneous" standard of Federal Rule of Civil Procedure
52(a), providing that findings of fact shall not be set aside unless
clearly erroneous. 72 L Ed 2d 890.

Liability of highway authorities arising out of motor vehicle acci-
dent allegedly caused by failure to erect or properly maintain
traffic control device at intersection. 34 ALR3d 1008.

most effective method of reducing the type of accident which occurred in this case, i.e., one arising out of the failure to stop at the existing stop sign.

Affirmed.

1. HIGHWAYS — MAINTENANCE OF HIGHWAYS — NEGLIGENCE.

All governmental agencies, state and local, are statutorily liable for injuries arising out of the failure to maintain a highway in reasonable repair; the duty to maintain a highway in reasonable repair includes the duty to post signs at points of special danger to motorists, including intersections, and, specifically, signs sufficient to give adequate warning of the danger (MCL 691.1402; MSA 3.996[102]).

2. APPEAL — FINDINGS OF FACT — COURT RULES.

The Court of Appeals will not set aside a trial court's findings of fact unless they are clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made (MCR 2.613[C]).

*Gemrich, Moser, Dombrowski, Bowser & Fette* (by *William L. Fette* and *Mary E. Delehanty*), for Comerica Bank of Kalamazoo.

*Gerald H. Moffat,* for Mary Neff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Carl K. Carlsen* and *Craig Atchinson,* Assistant Attorneys General, for the Department of Transportation.

Before: H. HOOD, P.J., and D. E. HOLBROOK, JR., and M. R. STEMPIEN,* JJ.

PER CURIAM. Plaintiffs' decedents were killed when their pickup truck, driven by decedent Blanch Chandler, heading southbound on M-40 collided with a vehicle heading westbound on M-43 and driven by Vickie Sholes. The collision occurred at the intersection of the two highways in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Van Buren County. The Chandler vehicle either did not stop or it failed to come to a complete stop at the stop sign on M-40. In each case, plaintiffs sought recovery against the Department of Transportation alleging that it violated its statutory duty to maintain the road in reasonable repair and in a condition reasonably safe and fit for travel. MCL 691.1402; MSA 3.996(102). The cases were consolidated by the Court of Claims. Sitting without a jury, the lower court entered a judgment of no cause of action against plaintiffs and each appeals as of right.

Plaintiffs dispute the finding of the trial court that defendant was not negligent in its maintenance and installation of traffic control devices at the intersection in question.

All governmental agencies, state and local, remain statutorily liable for injuries arising out of the failure to maintain a highway in reasonable repair. *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 591; 363 NW2d 641 (1984). MCL 691.1402; MSA 3.996(102) provides in pertinent part:

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency.

The statutory duty imposed upon defendant includes the duty to post signs at points of special danger to motorists, including intersections: specifically, signs sufficient to give adequate warning of

the danger. *Grof v Michigan,* 126 Mich App 427, 434; 337 NW2d 345 (1983).

Evidence was presented in the instant case of various warning signs on M-40 leading up to the intersection. Specifically, a "stop ahead" warning sign was positioned on the right shoulder of southbound M-40, approximately 750 to 1,000 feet before the intersection. In 1979, a second stop ahead warning sign was placed on the left shoulder and set off slightly from the first. Three other signs were positioned between the stop ahead signs and the intersection indicating that there was an intersection ahead.[1] A standard thirty-six-inch stop sign was positioned at the intersection on the right shoulder of M-40. Above the intersection was a twelve-inch flashing red beacon and a hanging forty-inch internally illuminated stop sign. According to the evidence presented, there was clear vision for 1,500 feet each way at the intersection.

At trial, plaintiffs contended that four-way stop signs should have been installed at the intersection. Plaintiffs' expert witness, Dr. Donald Cleveland, an engineering expert in traffic design and traffic control devices, noted that over the past seven years there were ninety-six reported accidents at the intersection. Of those ninety-six accidents sixty-four involved right-angle collisions, the type of collision that occurred in the present case. Dr. Cleveland opined that, in the majority of cases, the cause of the accidents was driver failure; specifically, failure to stop on M-40. Dr. Cleveland felt that a four-way stop was necessary to make the intersection safe. Evidence was presented of two studies of similar intersections, the Lebel study

[1] Between the stop ahead signs and the intersection were a sign indicating "junction M-43," a highway number directional sign indicating M-40 straight ahead, and M-43 with arrows to right and to the left, and a sign indicating Paw Paw straight ahead, Kalamazoo to the left, and South Haven to the right.

and the Briglia study. In each study four-way stop signs were installed at the subject intersections and dramatic improvement in safety of the intersections occurred.

Edwin H. Miller, district traffic and safety engineer with the Department of Transportation, and the person responsible for traffic control devices at the intersection in question, testified that four-way stop signs were considered for the intersection but were not installed. Miller believed that four-way stop signs would not be practical in solving the problems of people failing to stop at an already existent stop sign. Miller verified that subsequent to the installation of the various traffic control devices now in existence at the M-40 and M-43 intersection, the incidence of accidents at the intersection decreased.

In entering the judgment of no cause of action against plaintiffs, the trial court found that the Department of Transportation was not negligent in failing to install four-way stop signs at the intersection in question:

> The issue put to me, as I see it, was the engineer in charge, Mr. Miller, negligent in his discretionary decision not to put up four-way signs with the knowledge that he had.
>
> *    *    *
>
> So, the issue is was the installation of the stop ahead sign some twelve hundred fifty (1250) feet back from the intersection, a second stop ahead notice sign on the left of the intersection approaching the stop sign, an overhead twelve (12) inch flashing red light, a forty (40) by forty (40) overhead internally illuminated sign, and the opposite less travelled intersection with the yellow flasher, is that a reasonable safety sign device under the condition existing at that time?
>
> I listened carefully to the reasons why a four-

way stop sign was testified to by the plaintiff's expert. I listened carefully to and [sic] the report, the study by Doctor Labelle [sic], and there is no question in the Court's mind that Mr. Miller had the information concerning the four-way stop at that time in 1979. He also was aware of the number of accidents at the intersection. He was aware that the State Police had complained that this was a dangerous intersection and that some citizens had made the same complaint.

Now, I point out when I say dangerous intersection, it is not synonymous with reasonably safe and fit for public travelled [sic] condition. They are not synonymous.

I listened carefully to the testimony of the two (2) State Police officers and to the other parties that were called and said in their opinion this was a dangerous intersection. I also noted nobody asked them if this was reasonably safe and fit for public travel, which is the criteria that I have to judge by and I'm saying dangerous intersection and reasonably safe and fit for travel are not the same. I think everybody recognizes that.

I was impressed with the truck driver that indicated in answer to the question in your opinion is this a dangerous intersection and he said yes and no. A kind of wishy washy answer, but he explained it very carefully. He said if you are paying attention, it's not a dangerous intersection. If you are not paying attention, it's dangerous. Well, that's true with everything.

So, I listened carefully as to the reasons they gave for their determination as to why this was a dangerous intersection and the reason came that it was the number of accidents. I don't know of anything that says I can take from a statement that a number of accidents making people decide it's a dangerous intersection is substantial reason for changing it, because there can be several accidents at any place and still not be the reason for the dangerous intersection.

\* \* \*

There was also testimony that a four-way stop

by Labelle's study was most effective when they stop and then fail to yield right-of-way type of accident. And not necessarily for those running a stop sign. I weighed that also.

Now, in weighing that decision I also have to take in the testimony of what happened at this intersection under the circumstances that Mr. Miller studied this and made a decision. My notes indicate that it was effective in 1978. There were eleven (11) or nine (9) accidents at this intersection. There is this little discrepancy in this. In 1979 there were nine (9) accidents and in 1980 there were six (6) accidents. In 1981 up until the date of this accident, there were zero (0) to the date of the accident in April of 1981.

Mr. Fette did in fact argue the position and I took that into account that in the first quarter of each of these years there was not much change in the accident rate. I believe the better analysis and I so hold is to take the yearly figure to see if it's effective. From the testimony here, which is not disputed, certainly from 1978 to 1981 the stop signs and the signs at the intersection certainly were effective to cut down on accident rate and, after all, that's the duty of the engineer.

So, it's my opinion, after reading all of the matters, considering all of the evidence, it's my opinion that Mr. Miller was not negligent in deciding that the intersection as he had it with the stop ahead on the right and the left with the cross road through traffic signs, with the overhead flashing light and the big, long illuminated sign, he was not negligent in making that decision to upgrade that in 1979.

This Court will not set aside the trial court's findings of fact unless they are clearly erroneous. MCR 2.613(C). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways*, 397 Mich 44, 46; 243

NW2d 244 (1976); *Peterson v Dep't of Transportation,* 154 Mich App 790, 795; 399 NW2d 414 (1986). We cannot find in this case that the trial court's findings were clearly erroneous. The evidence supports the trial court's findings that the decision of whether to install a four-way stop sign was discretionary; that defendant had taken steps to improve the safety of the intersection; that the smooth flow of traffic was a safety factor; and that a four-way stop sign was not necessarily the most effective method of reducing the type of accident that occurred in this case, i.e., one arising out of the failure to stop at the existing stop sign.

Finally, the trial court correctly found that although there were numerous accidents at the intersection since 1978, the yearly accident rate had been reduced through the use of the control devices existing since 1979. In view of these well-supported findings, we conclude that the trial court did not err in finding that defendant was not negligent in failing to install four-way stop signs.

We disagree with plaintiffs' contention that *Grof, supra,* is applicable. In that case the court found defendant negligent in failing to carry out its own work order after it had determined that the existing control devices at the subject intersection were not adequately controlling traffic. The court declined to decide whether defendant's exposure to liability might have been different in the absence of such a determination by it or in the absence of such a work authorization.

Affirmed.