SUTTLES v DEPARTMENT OF TRANSPORTATION

BROWN v DEPARTMENT OF TRANSPORTATION

Docket Nos. 106119, 106359. Argued November 5, 1997 (Calendar Nos. 11-12). Decided June 9, 1998.  Rehearing granted in *Brown*, 459 Mich 1207.

Rex Suttles, for himself and as personal representative of the estate of Pansy Suttles, deceased, brought an action in the Genesee Circuit Court against the city of Flint, alleging that the decedent was injured when she slipped and fell while getting out of a vehicle on an unnatural accumulation of ice and snow on a street next to a curbed parking area. The court, Robert M. Ransom, J., granted the defendant's motion for summary disposition, finding that the state had jurisdiction because the street was a designated state trunk line. The plaintiff then refiled the complaint in the Court of Claims against the Department of Transportation. The court, Peter D. Houk, J., granted the defendant's motion for summary disposition under MCR 2.116(C)(7) and *Mason v Wayne Co Bd of Comm'rs*, 447 Mich 130 (1994). The Court of Appeals, MARKMAN, P.J., and HOEKSTRA, J. (MURPHY, J., dissenting), affirmed (Docket No. 181267). The plaintiff appeals.

Kathy Brown, as next friend of Abby DeRusha, a minor, brought an action in the Emmet Circuit Court against the city of Harbor Springs and in the Court of Claims against the Department of Transportation, alleging that Abby was injured when she was struck by an automobile while crossing a street in a crosswalk at a negligently designed intersection and that the injury was foreseeable. The cases were consolidated in the circuit court. The court, Richard M. Pajtas, J., denied the defendant's motions for summary disposition. The Court of Appeals, TAYLOR, P.J., and D. E. HOLBROOK, JR., J. (NEFF, J., dissenting), reversed by peremptory order, relying on *Mason v Wayne Co Bd of Commr's*, 447 Mich 130 (1994) (Docket No. 188151). The plaintiff appeals.

   In separate opinions in *Suttles*, the Supreme Court reversed and remanded to the trial court for further factual development.

   In *Brown*, the judgment of the Court of Appeals was affirmed by equal division. Also in *Brown*, in an opinion by Justice CAVANAGH,

joined by Justices Brickley and Kelly, and an opinion by Justice Weaver, the Supreme Court *held*:

When a plaintiff's injury occurs in a crosswalk, but the plaintiff alleges that the defect was in the improved portion of the highway, the plaintiff's claim should go forward.

Chief Justice Mallett, joined by Justice Boyle, stated that a review of MCL 691.1402(1); MSA 3.996(102)(1) and previous decisions of the Supreme Court lead to the conclusion that pedestrians may come within the highway exception to governmental immunity only in limited situations. The statute does not offer general protection to pedestrians or motorists without regard to location. The mandate of the statute is clear: Neither the state nor a county owe a duty to a pedestrian while the pedestrian is in a crosswalk. In *Suttles*, if the plaintiff is found on remand to have been injured on the sidewalk, then neither the county nor the state would owe her a duty under the highway exception. If, however, she was injured in the traveled portion of the highway because of defendant's negligence, then she may have pleaded a cause of action within the exception. The defendant would not be liable to the plaintiff automatically even if it is found that she was injured on the improved portion of the highway designed for vehicular travel. She must still demonstrate the requisite elements of a negligence cause of action. Because in *Brown* it is undisputed that plaintiff's next friend was injured while she was in the crosswalk, neither the state nor the county owed her a duty.

Justice Taylor, concurring only in *Suttles*, stated that the applicability of the highway exception turns on the location of the alleged defect, not where the alleged injury occurred.

Justice Weaver, concurring in part and dissenting in part, stated that the state or county is bound to fix a design or construction defect only when that defect would leave the physical surface of the road in disrepair and therefore unsafe. Thus, the plaintiff in *Brown* did not plead a claim that avoids governmental immunity. However, Justice Weaver agreed with the dissent that when a plaintiff's injury occurs in a crosswalk, but the plaintiff alleges that the defect was in the improved portion of the highway, the plaintiff's claim should go forward.

Justice Cavanagh, joined by Justices Brickley and Kelly, concurring only in the result in *Suttles*, and dissenting in *Brown*, stated that the Legislature intended that the focus of the highway exception should be on the nature or location of the claimed defect, not on the status of the person injured or the place where the injury occurred.

Under the language of MCL 691.1402(1); MSA 3.996(102)(1), a person may recover damages from a governmental agency where the agency breached its duty to repair and maintain a highway. The liability for that duty extends only to the improved portion of the highway designed for vehicular travel; it does not extend to repairing and maintaining sidewalks, crosswalks, or any other installation outside the improved portion of the highway designed for vehicular travel. Because the plaintiff in *Brown* did not allege that the state had a duty to repair or maintain a crosswalk, but, instead, alleged that the state had a duty to repair and maintain the intersection preceding the crosswalk, which was part of the improved portion of the highway, her claim should go forward.

The lead opinion would have taken the statute and twisted its meaning into an awkward holding that states that, even though the improved portion of the road may be defective, a person may not recover if injured while traversing a crosswalk. The plaintiff in this case did not allege that the state failed to maintain the crosswalk in a safe condition; rather, she alleged that the improved portion of the highway designed for vehicular travel was not safe. The mere mention of a crosswalk should not defeat a plaintiff's claim, especially where the plaintiff has alleged a defect in the improved portion of the road.

The lead opinion erroneously focuses on where the alleged injury occurred and the class of persons who are injured, rather than on where the defect occurred. It is abundantly clear from the statutory language and case law that the statute defines the government's duty by indicating what portions of the road it must maintain and repair, not to whom it owes a duty or where the injury occurs.

*Suttles*, reversed and remanded.

*Brown*, affirmed by equal division.

216 Mich App 166; 548 NW2d 671 (1996) reversed.

*Cohen & Ellias, P.C.* (by *Joshua A. Lerner*), for the plaintiff-appellant in *Suttles*.

*Gruel, Mills, Nims & Pylman, L.L.P.* (by *Scott R. Melton* and *Brion J. Brooks*), for the plaintiff-appellant in *Brown*.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Brenda E. Turner* and

*Harold J. Martin,* Assistant Attorneys General, for the defendant.

MALLETT, C.J. In these combined cases, we granted leave to determine whether the highway exception to governmental immunity applies to accidents involving pedestrians. MCL 691.1402(1); MSA 3.996(102)(1). In *Suttles,* the Court of Appeals affirmed the trial court's grant of defendant's motion for summary disposition. 216 Mich App 166; 548 NW2d 671 (1996). In *Brown,* the Court of Appeals, by peremptory order, reversed the trial court's denial of defendant's motion for summary disposition. Because the factual record in *Suttles* is unclear, we would remand the case with instructions to the trial court. We would affirm the decision of the Court of Appeals in *Brown* because it correctly applied *Mason v Wayne Co Bd of Comm'rs,* 447 Mich 130; 523 NW2d 791 (1994).

I

A. *SUTTLES v DEP'T OF TRANSPORTATION*

On March 15, 1992, plaintiff's decedent got out of the passenger side of an automobile that was parked outside a church on Saginaw Street in downtown Flint, Michigan. She alleges that she slipped and fell because of an unnatural accumulation of ice and snow on the highway next to the curbed parking area. Her personal representative originally filed a complaint in the Genesee Circuit Court against the city of Flint. The city filed a motion for summary disposition, alleging that before the accident the state of Michigan had jurisdiction over Saginaw Street because it was a designated state trunk line. The circuit court granted the city's motion. Plaintiff then refiled the complaint

in the Court of Claims, naming the state of Michigan, Department of Transportation, as defendant. The Court of Claims granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(7) and this Court's opinion in *Mason, supra.* Plaintiff appealed, and the Court of Appeals affirmed the Court of Claims order dismissing plaintiff's complaint on governmental immunity grounds.

### B. *BROWN v DEP'T OF TRANSPORTATION*

On July 1, 1993, plaintiff's next friend was struck and injured while attempting to cross the intersection of M-119, West Bluff Street, and State Street in the city of Harbor Springs, Michigan. M-119 is a part of the state trunk line in Harbor Springs that runs in an east-west direction. State Street runs north-south and West Bluff Street runs east-west until it dead ends into M-119, which, at the intersection in dispute, angles in a northerly direction into West Bluff Street. At all times relevant to this appeal, State and West Bluff Streets were under the jurisdiction of the city of Harbor Springs.

As plaintiff's next friend and her companion approached the intersection on M-119 while heading toward downtown Harbor Springs, they intended to cross the intersection by way of the crosswalk installed as part of the traveled portion of the M-119 highway.[1] As plaintiff's next friend attempted to tra-

---

[1] This Court has previously held that the Legislature intended to use applicable terms in the governmental tort immunity act with the same meaning as they have in the motor vehicle code, MCL 257.1 *et seq.*; MSA 9.1801 *et seq.* See *Roy v Dep't of Transportation,* 428 Mich 330, 338; 408 NW2d 783 (1987).

The motor vehicle code, MCL 257.10; MSA 9.1810, defines "Cross-walk" as

verse the M-119 crosswalk, she was struck by an automobile traveling westbound on M-119. Plaintiff alleges that the intersection design was unreasonably dangerous because it is necessary for vehicular traffic heading south on State Street and attempting to turn left on eastbound M-119 to proceed into the intersection to adequately view oncoming traffic. Plaintiff claims the state owed a duty to plaintiff's next friend because it was foreseeable that an injury to a pedestrian would occur as a result of the negligently designed intersection.

Plaintiff filed the instant action against the city of Harbor Springs in the Emmet Circuit Court and against the Department of Transportation in the Court of Claims. The two cases were consolidated in the circuit court. The city and department moved for summary disposition pursuant to MCR 2.116(C)(7) and (8), which the trial court denied.[2] The Court of Appeals reversed by peremptory order, relying on this Court's decision in *Mason, supra*. We granted leave to appeal in both cases,[3] consolidated for the purpose of this appeal, to address whether the Legislature

---

(a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges of the traversable highway.

(b) Any portion of a highway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.

Crosswalks as defined above are not to be confused with a "pedestrian overhead walkway." MCL 257.627a(3); MSA 9.2327(1)(3). See also *Mason, supra* at 136, n 5.

[2] It appears from the record that the trial court granted in part and denied in part the city of Harbor Springs motion for summary disposition. The city has not taken part in this appeal.

[3] 454 Mich 895, 896 (1997).

intended to include pedestrians within the highway exception to governmental immunity.

## II

### A

It is well settled in this state that governmental agencies are immune from tort liability while engaging in a governmental function unless an exception applies. MCL 691.1407; MSA 3.996(107); *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 618; 363 NW2d 641 (1984). It is also well settled that the exceptions are to be narrowly construed. *Id.*; *Reardon v Dep't of Mental Health*, 430 Mich 398, 411; 424 NW2d 248 (1988). Here, this Court is again faced with the task of interpreting the highway exception to governmental immunity. MCL 691.1402(1); MSA 3.996(102)(1).[4]

---

[4] The highway exception provides:

Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person sustaining bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21 of chapter IV of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Michigan Compiled Laws. The duty of the state and county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. A judgment against the state based on a claim arising under this section from acts or omissions of the state transportation department is payable only from restricted funds appropriated to the state transportation department or funds provided by its insurer.

In *Suttles*, the trial court granted defendant's
motion for summary disposition pursuant to MCR
2.116(C)(7). In *Brown*, the lower court granted
defendant's motion for summary disposition pursuant
to MCR 2.116(C)(7) and (8). In determining whether a
plaintiff's claim is barred by governmental immunity,
we must consider all documentary evidence, includ-
ing any pleadings, depositions, admissions, or any
other documentary evidence submitted by the parties.
*Wade v Dep't of Corrections*, 439 Mich 158, 162; 483
NW2d 26 (1992); *Gibson v Grand Rapids*, 162 Mich
App 100; 412 NW2d 658 (1987). In order to survive a
motion for summary disposition under MCR
2.116(C)(7), the plaintiff must allege facts in the com-
plaint "justifying application of an exception to gov-
ernmental immunity." 439 Mich 163.

A motion pursuant to MCR 2.116(C)(8) tests the
legal sufficiency of the complaint and allows only
consideration of the pleadings. *Id.* Under both (C)(7)
and (8) motions, courts must accept all well-pleaded
facts as true and construe them in a light most
favorable to the nonmoving party. *Id.* at 162-163. A
motion under MCR 2.116(C)(8) may only be granted
where the claims alleged are so clearly unenforceable
as a matter of law that no factual development could
possibly justify recovery. *Id.* at 163.

B

We acknowledge that the notion of governmental
immunity, its interpretation, and its practical applica-
tion have been difficult at times, stemming in part
from the decisions of this Court and from the confus-

ing nature of the statute itself.[5] The history of governmental immunity has been well documented in prior decisions of this Court, but, we believe, the facts of these cases require a brief look at the history once again. This Court concisely set forth the history underlying the highway exception to governmental immunity in *Scheurman v Dep't of Transportation,* 434 Mich 619, 629; 456 NW2d 66 (1990):

> The cases before us today center on the highway exception statute, MCL 691.1402; MSA 3.996(102). The origin of the statute is the enactment of 1879 PA 244; 1 How Stat 1442, which imposed liability upon municipalities "in favor of any person 'sustaining bodily injury upon any of the public highways or streets in the state, by reason of neglect to keep such public highways or streets, and all bridges, cross-

---

[5] The Court of Appeals majority in *Suttles* noted the confusing nature of the statute as well:

> The express language of the highway exception indicates that the duty of highway authorities to repair and maintain the highways "shall extend only to the improved portion of the highway designed for vehicular travel." The provision then states that such duty "shall not" extend to three types of installations: (1) "sidewalks"; (2) "crosswalks"; and (3) "any *other* installation outside of the improved portion of the highway designed for vehicular travel." (Emphasis added.)
>
> This language is confusing for several reasons. First, its structure implies that installations 1, 2, and 3 are exclusions from the highway exception. Yet, it is difficult to fathom how "sidewalks," unlike "crosswalks," could be construed as part of the "improved portion of the highway designed for vehicular travel," even absent their explicit exclusion from the highway exception. Second, the "any *other* installation" language of the third exclusion to the highway exception follows a specific enumeration of terms that by implication also describe installations "outside of the improved portion of the highway designed for vehicular travel"; "crosswalks," however, clearly do not fit this description. In other words, it is unclear why "sidewalks" are expressly excluded from the highway exception and it is equally unclear why "crosswalks" are implicitly described as installations "outside of the improved portion of the highway designed for vehicular travel." [*Id.* at 168-169.]

walks and culverts on the same in good repair, and in a
condition reasonably safe and fit for travel . . . .' " *Roy v
Dep't of Transportation*, 428 Mich 330, 336-337; 408 NW2d
783 (1987). With the passage of 1887 PA 264; 3 How Stat
1446c, the Legislature amended the statute and *expanded*
its scope of liability to include sidewalks. *Id.* at 337.

However, when the Legislature codified governmental
immunity in 1964, it *specifically reduced* the purview of the
highway exception statute. Section 2 of the governmental
immunity act *expressly excludes* the state and the counties
from liability for "sidewalks, crosswalks or any other instal-
lation outside of [sic] the improved portion of the highway
designed for vehicular travel." MCL 691.1402; MSA
3.996(102). Furthermore, the duty of the state and the coun-
ties created under § 2, "shall extend *only* to the improved
portion of the highway designed for vehicular travel . . . ."
[Emphasis in original.]

We find this synopsis of the history underlying the
highway exception instructive. The 1879 enactment
articulated a broad exception to immunity that
allowed "any person" a cause of action for an injury
sustained on or by any of the areas listed. The 1887
amendment *increased* the scope of the liability to
include sidewalks, perhaps the only area not provided
for in the original exception. With the codification of
governmental immunity in 1964, the highway excep-
tion was significantly narrowed and no longer
allowed liability for the state and county for injuries
incurred in three specific areas: (1) sidewalks, (2)
crosswalks, or (3) any other installation outside the
improved portion of the highway designed for vehicu-
lar travel.

The import of this specific limitation indicates, we
believe, the Legislature's intent to significantly limit a
pedestrian's ability to recover. With this background
in mind, we proceed with these cases, while keeping

to our mandate of interpreting the exceptions to governmental immunity narrowly. See *Ross* and *Reardon*, *supra.*

C

Today we address the specific question whether pedestrians are covered by the highway exception to governmental immunity. A review of MCL 691.1402(1); MSA 3.996(102)(1) and previous decisions of this Court lead us to conclude that pedestrians may come within the exception in limited situations.

Recent decisions of this Court provide guidance in this area. In *Roy v Dep't of Transportation*, the plaintiff[6] was injured while riding his bicycle on a bicycle path adjacent to a portion of I-275. *Id.* at 332. The plaintiff's bicycle hit a "bump" that allegedly posed a danger to bicyclists and which was covered by weeds that had been previously cut and piled by the defendant. As a result, the plaintiff suffered severe injuries. *Id.*

The issue presented in *Roy* was whether a bicycle path that ran parallel to, but detached from, the traveled portion of the roadway was part of the highway, so as to fall within the highway exception to governmental immunity. We held, under the facts of that case, that the plaintiff's claim was barred by governmental immunity. In reaching that result, we noted:

Section 2 [MCL 691.1402(1); MSA 3.996(102)(1)] does not reveal a legislative purpose to protect bicyclists in general, as suggested by the Court of Appeals. *Indeed, the statute does not offer general protection to pedestrians or motor-*

---

[6] The injured plaintiff and his wife filed suit against the Department of Transportation. The plaintiff's wife's claim was derivative only.

*ists without regard to location.* The statute announces a
duty to repair and maintain the highway so that the
improved portion designed for vehicular travel is reasona-
bly safe and convenient for public travel. The criterion used
by the Legislature was not based on the class of travelers,
but the road on which they travel. [*Id.* at 341 (emphasis
added).]

A case that presented both an issue and set of facts
similar to *Roy* was *Gregg v State Hwy Dep't*, 435 Mich
307; 458 NW2d 619 (1990). The plaintiff in *Gregg* was
injured when his fourteen-speed racing bicycle hit a
pothole and overturned. Again, we considered
whether the bicycle path in that case was part of the
highway so as to fall within the highway exception to
governmental immunity. We held that because the
bicycle path in *Gregg* was part of "the west shoulder
of [the] highway," unlike *Roy* where the path was not
a part of, but ran parallel to, the roadway, the plain-
tiff's claim fell within the exception. *Id.* at 310.

Justice BRICKLEY utilized the following rationale
from *Roy* to support this Court's finding that the
plaintiff's claim in *Gregg* was not barred by govern-
mental immunity:

"[T]he exception to immunity found in § 2 of the govern-
mental immunity act does not apply to bicycle paths. The
[highway exception to immunity] does not apply to 'an
installation outside of the improved portion of the highway
designed for vehicular travel.' A bicycle path is not
designed for vehicular travel, in the common sense of
'vehicular' as relating to motor vehicle. [428 Mich 340.]

*         *         *

"[T]he statute does not offer general protection to pedes-
trians or motorists without regard to location. The statute
announces a duty to repair and maintain the highway so

that the improved portion designed for vehicular travel is reasonably safe and convenient for public travel. The criterion used by the Legislature was not based on the class of travelers, but the road on which they travel. [428 Mich 341.]" [*Gregg, supra* at 312.]

We concluded in *Gregg*:

[N]ot only did *Roy* concern a bicycle path that was separate and apart from the roadway and the shoulder of the highway, but it concerned a path on which motor vehicles would have no occasion to enter for any reason. Furthermore, our analysis of *Roy* supports the different result in this case. In concluding our analysis in *Roy*, we said:

"This interpretation fits within each of the interpretative clues identified above. It satisfies the express wording of § 2 which limits the duty created there to less than the full highway. It does not frustrate the policy announced in other statutes of protecting bicyclists by requiring them to use bicycle paths, where provided, in preference to roads, *because bicycles on bicycle paths are not exposed to the hazards which arise from mixing bicycle and vehicular means of travel.*" [*Id.* at 316, quoting *Roy, supra* at 341 (emphasis in original).]

The crux of the analysis we utilized in *Roy* and *Gregg* applies to the facts of these cases as well. We noted that " 'the statute does not offer general protection to pedestrians or motorists without regard to location.' " *Gregg, supra* at 312, quoting *Roy, supra* at 341.[7]

We more recently addressed the applicability of the highway exception to an injured pedestrian in *Mason v Wayne Co Bd of Comm'rs*. There, the plaintiff

---

[7] In *Gregg* at 311, n 3, this Court specifically noted the fact that the plaintiff was "entitled to travel on the improved portion" of the highway. Stated otherwise, the plaintiff was an intended and permitted user of the improved portion of the highway.

alleged that the county was liable for failing to install school warning signs near an elementary school in Detroit. A majority of this Court rejected that argument because "[t]he plaintiffs' action . . . [did] not present a special danger to vehicles. The highway exception abrogates governmental immunity at 'points of special danger to motorists . . . .'" *Id.* at 135, quoting *Grof v Michigan*, 126 Mich App 427, 434; 337 NW2d 345 (1983); *Comerica Bank of Kalamazoo v Dep't of Transportation*, 168 Mich App 84, 86; 424 NW2d 2 (1987). We noted that because the limiting sentence of the highway exception[8] excluded "specific installations whose only rational purposes narrowly service the unique needs of pedestrians," it indicated "a [legislative] conclusion that pedestrians and users of these installations have been sufficiently protected by the separation of them from motorists, without any need to impose a duty of maintenance and repair enforced by liability for resultant injuries." *Mason, supra* at 136-137.

The following analysis from *Mason* supports this interpretation:

> [T]he phrase "designed for vehicular travel" can only be reasonably interpreted to mean "*intended* for vehicular travel." The explicit removal of exclusively pedestrian installations from the highway exception, coupled with the express language of the provision itself, permits but one conclusion: Pedestrians who trek upon Michigan highways

---

[8] The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. [MCL 691.1402(1); MSA 3.996(102)(1).]

must and do venture beyond the protective mandates of MCL 691.1402(1); MSA 3.996(102)(1).

The exclusion of crosswalks from the highway exception is consistent with the idea underlying the highway exception—that drivers of vehicles should be able to keep their minds on the traffic, and should not have to worry that dangerous surprises lie ahead. Pedestrians are situated differently than vehicular traffic, which may approach obstacles in the highway too quickly to avoid them, or may avoid obstacles only by jeopardizing traffic in the adjoining lanes.

This legislative line drawing is also explicable on the ground that expanding the right to sue past a certain point does not prevent accidents, and amounts to nothing more than an expanded obligation to pay. The Legislature may well have concluded that governmental liability for injuries to pedestrians crossing the street will not enhance vehicular safety. [*Id.* at 137-138.]

In *Roy* and *Gregg*, we indicated that we examined not the class of individual, but the area on which the individual traveled. As long as the individual was injured on the improved portion of the highway and was not injured in any of the three areas listed in MCL 691.1402(1); MSA 3.996(102)(1), we have consistently held that that individual stated a cause of action so as to avoid governmental immunity.

In light of this, we now turn to the facts of these combined cases in an effort to further the legislative purpose underlying the highway exception to governmental immunity, keeping in mind our mandate to construe the conditions and restrictions of the statute narrowly.[9]

---

[9] This follows Chief Justice RILEY's analysis in *Scheurman, supra* at 630, n 20:

Another seemingly obvious reason to construe the highway exception narrowly is the language of the specific § 2 phrase that

III

Plaintiff Suttles contends that as long as a person is on the improved portion of the highway and is not within the specifically exempted areas of crosswalks, sidewalks, or other pedestrian installations, the government is not entitled to immunity. Plaintiff Brown alleges that because of a design defect at the intersection in question, the defendant breached its duty to maintain the improved portion of the highway safe for vehicular travel.

A

Plaintiff Suttles got out from the passenger's side of the vehicle in which she was traveling and was injured when she allegedly slipped and fell on an unnatural accumulation of ice and snow. The record is replete with varying accounts regarding the specifics surrounding plaintiff's injury. For example, in her deposition taken before her death, the plaintiff indicated, at one point, that she was on the improved portion of the highway at the time she fell. Later, she indicated that she was on the curb or sidewalk when she was injured.

There was also conflicting testimony regarding the location of the ice and snow. The plaintiff indicated the accumulation was both on the sidewalk and on the improved portion of the highway. The plaintiff's personal representative testified in his deposition that he found the plaintiff laying on the sidewalk next to

---

we are interpreting today. The Legislature provided that the duty of the state and the counties "shall extend *only* to . . . ." (Emphasis added.) Common sense suggests that the "only" implies that the Legislature intended the duty to be strictly construed.

the ice and snow that had been piled on the sidewalk and spilled over onto the curb. The accounts regarding snowfall on the day in question also conflicted.

Finally, the maintenance workers and the security personnel from the office building located immediately adjacent to the area where plaintiff was injured also testified. The city of Flint's street maintenance supervisor testified as well. These individuals gave different accounts regarding whose responsibility it was to remove snow and ice, and the origin, size, and location of the snow accumulation in this case.

To the extent the answers to these and other issues relate to the duty, if any, owed to plaintiff by defendant at the time of her injury, they must be resolved by the trial court on remand.[10] If plaintiff is found to have been injured on the sidewalk, then neither the county nor the state owed her a duty under the high-

---

[10] In every instance where a plaintiff alleges a cause of action based on the highway exception to governmental immunity, MCL 691.1402(1); MSA 3.996(102)(1), the court must engage in a two-step analysis. The first step requires a determination whether the plaintiff has pleaded a cause of action in avoidance of governmental immunity. First, a court must determine whether the plaintiff's accident occurred on the improved portion of the highway designed for vehicular travel. The next question that must be answered under the first step is whether the plaintiff's injury occurred on a sidewalk, in a crosswalk, or on "any other installation outside of the improved portion of the highway designed for vehicular travel." *Id.* Under the latter inquiry, if the injury occurred in any of the three delineated areas, the plaintiff's claim does not fit within the exception to governmental immunity, i.e., the plaintiff's claim is barred. However, if the injury occurred in an area of the improved portion of the highway, other than in one of the three specifically excluded areas, the plaintiff has pleaded a cause of action circumventing governmental immunity and the plaintiff may proceed with the negligence cause of action.

Under the second step, a plaintiff must prove a cause of action under traditional negligence principles. Concepts such as the "intended and permitted user" language derived from *Gregg* apply to the negligence analysis and bear on whether a defendant owed a duty to the plaintiff or whether the plaintiff was comparatively negligent. See *Mason, supra* at 136, n 5. A plaintiff, in order to recover, must satisfy both legs of this analysis.

way exception to governmental immunity. MCL
691.1402(1); MSA 3.996(102)(1). If, however, plaintiff
was injured in the traveled portion of the highway
because of defendant's negligence, then she may have
pleaded a cause of action within the highway excep-
tion to governmental immunity.[11]

The record indicates the vehicle in which the plain-
tiff was traveling parallel parked along the curb in a
portion of the highway that had been specifically des-
ignated for parking by an alcove-like curbed area.
This Court's holding in *Mason* provided that if a plain-
tiff is injured on a sidewalk, in a crosswalk, or on any
other installation outside the improved portion of the
highway designed for vehicular travel, no duty is
owed to that plaintiff by the state or a county. If, on
remand, it is determined that plaintiff was on the
sidewalk when she fell, the analysis is simple: The
defendant did not owe a duty to her.

If, however, it is found that the plaintiff fell and
was injured by a defect in the improved portion of
the highway, then she may have pleaded a cause of
action so as to avoid governmental immunity.[12]
Hence, we would reaffirm the analysis adopted in
*Gregg*, which allowed suit by a nonvehicular traveler

---

[11] This opinion should neither be interpreted as overruling the estab-
lished line of authority that a governmental agency's failure to remove nat-
ural accumulations of ice and snow does not automatically constitute neg-
ligence on the part of that governmental agency, see *Reese v Wayne Co*,
193 Mich App 215, 217; 483 NW2d 671 (1992), and cases cited therein, nor
should it be interpreted as establishing a cause of action under the high-
way exception on the basis of unnatural accumulations of ice and snow.
Because neither question is properly before us today, we need not address
either one.

[12] We note plaintiff's complaint is, perhaps purposefully, ambiguous
regarding where she fell. It could be read to allege a fall on the improved
portion of the highway or on the sidewalk. In addition, as noted earlier,
plaintiff's deposition testimony in this regard was contradictory.

who was injured on the improved portion of the highway designed for vehicular travel. We would leave it to the trial court on remand to ascertain the answers to these questions.

We reiterate, however, that the immediately preceding discussion should not be interpreted to mean the defendant is automatically liable to the plaintiff even if it is found that she was injured on the improved portion of the highway designed for vehicular travel. Plaintiff must still demonstrate the requisite elements of a negligence cause of action. If on remand the trial court determines that the plaintiff has sufficiently pleaded a cause of action so as to avoid governmental immunity, the existence of a duty owed to plaintiff by defendant has been established. Plaintiff must then prove defendant breached that duty, and that the breach was the proximate and factual cause of her injury.

B

Plaintiff Brown's next friend was injured when she was struck by an automobile while crossing M-119 on a crosswalk. The mandate of MCL 691.1402(1); MSA 3.996(102)(1) is clear: Neither the state nor a county owes a duty to a pedestrian while the pedestrian is in a crosswalk. This issue was decided by this Court in *Mason*, and we would specifically reaffirm that holding today.[13] Because it is undisputed that plaintiff's next friend was injured while she was in the cross-

---

[13] The author notes that the position taken here may seem inconsistent with that of the dissent in *Mason, supra* at 139, which this author signed. Given the majority holding in *Mason* and the clear language of MCL 691.1402(1); MSA 3.996(102)(1) concerning the lack of duty for injuries sustained in crosswalks, the author recognizes that *Mason* is controlling.

walk, neither the state nor the county owed her a duty. Summary disposition under MCR 2.116(C)(7) and (8) was therefore proper.[14]

IV

For the foregoing reasons, we would reverse *Suttles* and remand the case to the trial court with instructions for further factual development, and we would affirm the Court of Appeals decision in *Brown*.[15]

BOYLE, J., concurred with MALLETT, C.J.

TAYLOR, J. (*concurring only in Suttles*). In *Suttles*, I concur in the lead opinion's result and most of its analysis. I write separately only to clarify that I believe that applicability of the highway exception to governmental immunity, MCL 691.1402(1); MSA 3.996(102)(1), turns on the location of the alleged defect, not the location where the alleged injury occurred.

---

[14] The dissent would allow plaintiff's decedent to maintain a cause of action against the state for an injury sustained on the improved portion of the highway, her case premised on an alleged defect in the design of the intersection at which she was injured. We find this interpretation of the highway exception to be both overbroad and unsupported by the law of this state. Indeed, the dissent does not cite a single case to support its contention. This omission is not based on neglect, but instead on a lack of legal authority. No decision of this Court that has recognized a cause of action for a design or construction defect in a highway involved a pedestrian. See *Killeen v Dep't of Transportation*, 432 Mich 1; 438 NW2d 233 (1989); *Peters v State Hwys Dep't*, 400 Mich 50; 252 NW2d 799 (1977); *Carver v Detroit & Saline Plank Rd Co*, 61 Mich 584; 28 NW 721 (1886). The dissent's interpretation would establish a previously unrecognized cause of action for individuals outside the class of persons the highway exception was designed to protect.

[15] Since we reaffirm our decision in *Mason* that pedestrians in crosswalks are not covered by MCL 691.1402(1); MSA 3.996(102)(1), we need not address plaintiff Brown's allegation that there is a design defect at the intersection where plaintiff's next friend was injured.

WEAVER, J. (*concurring in part and dissenting in part*). I concur in *Suttles* and I agree with the result in *Brown*. I write separately because I disagree with the lead opinion's holding in *Brown* that neither the state nor a county owes a duty to a pedestrian while the pedestrian is in a crosswalk.

I continue to agree with Justice RILEY's dissent in *Pick v Szymczak*, 451 Mich 607, 632-656; 548 NW2d 603 (1996), which held that the highway exception statute does not impose a duty to repair defects in design or construction. Because I believe that the state or county is bound to fix a design or construction defect only when that defect would leave the physical surface of the road in disrepair and therefore unsafe, I would hold that the plaintiff in *Brown* did not plead a claim that avoids governmental immunity. Nonetheless, I agree with Justice CAVANAGH's opinion in *Brown* that when a plaintiff's injury occurs in a crosswalk, but the plaintiff alleges that the defect was in the improved portion of the highway, the plaintiff's claim should go forward.

CAVANAGH, J. I dissent from the lead opinion's reasoning and conclusion in *Brown v Dep't of Transportation*. I find that the reasoning of the lead opinion departs from the language of the statute, and I am unable to conclude that there is any support in the statute or prior case law for the two-part test articulated in footnote 10 of the lead opinion. MCL 691.1402(1); MSA 3.996(102)(1) states in relevant part:

A *person* sustaining bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the gov-

ernmental agency. . . . The duty of the state and county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. [Emphasis added.]

I find this portion of the statute, as it relates to *Brown*, to be clear. Under the language of the statute, "a person" may recover damages "from the governmental agency" where that agency breached its "duty . . . to repair and maintain highways" and the "liability for that duty, extends only to the improved portion of the highway designed for vehicular travel . . . ." The liability for that duty does not extend to "repair[ing] and maintain[ing]" sidewalks, crosswalks, or any other installation outside the improved portion of the highway designed for vehicular travel. Because plaintiff in *Brown* did not allege that the state had a duty to repair or maintain a crosswalk, but instead alleged that the state had a duty to repair and maintain the intersection preceding the crosswalk, which was part of the improved portion of the highway, plaintiff's claim should go forward.

The lead opinion has taken the statute and has twisted its meaning into an awkward holding that states that even though the improved portion of the road may be defective, a person may not recover if injured while traversing a crosswalk. Plaintiff in this case did not allege that the state failed to maintain the crosswalk in a safe condition; rather, she alleged that the *improved* portion *of the highway* designed for vehicular travel was not safe. The mere mention of a crosswalk should not defeat a plaintiff's claim,

especially where the plaintiff has alleged a defect in the improved portion of the road.

Plaintiff alleged that the design of the intersection preceding the crosswalk was defective because it violated industry standards relative to design and site distance requirements for intersections. Furthermore, in the six years preceding Abby DeRusha's injuries, there were at least six vehicle-to-vehicle accidents resulting from the same design and sight distance defects that contributed to Abby's injuries. Contrary to the intent of the Legislature, the lead opinion's holding would allow recovery for injuries sustained by passengers of the vehicles alleging the same defect alleged by Abby DeRusha, but would deny recovery to Abby DeRusha only because she was crossing the street at a crosswalk.

The Legislature intended that the focus of the highway exception should be on the nature or location of the claimed defect, not on the status of the person injured or the place where the injury occurred. I cannot accept the lead opinion's strained interpretation of the statute. Indeed, the decision in *Roy v Dep't of Transportation*, 428 Mich 330, 341; 408 NW2d 783 (1987), supports this proposition. "The criterion used by the Legislature was not based on the class of travelers, but on the road on which they travel."

While the lead opinion relies on *Mason v Wayne Co Bd of Comm'rs*, 447 Mich 130; 523 NW2d 791 (1994) to support its position, that case really bolsters plaintiff's interpretation of the statute by stating, "[t]he highway exception specifically excepts the state and counties from liability for defects *in* crosswalks, *the defect alleged by the plaintiff . . . .*" *Id.* at 135 (emphasis added). However, in our case, plaintiff

Brown did not allege a defect *in* the crosswalk, rather she alleged a defect in the improved portion of the highway.

I cannot agree with the lead opinion's conclusion because it erroneously focuses on where the alleged *injury* occurred and the *class of persons* who are injured, rather than focusing on where the *defect* occurred. Under the lead opinion's reasoning, "First, a court must determine whether the plaintiff's *accident* occurred on the improved portion of the highway designed for vehicular travel. The next question . . . is whether the plaintiff's *injury* occurred on a . . . crosswalk." *Ante* at 651, n 10 (emphasis added). I challenge the lead opinion to find support for this two-part test in the language of the statute. It simply is not there. Furthermore, support for the test is not found in our prior case law. Finally, support for the test is not founded on public policy grounds, as noted *infra*, in the discussion about jaywalkers.

A brief review of our prior case law will illustrate my point. In *Roy, supra*, we held that a bicycle path adjacent to, but separate and detached from, a highway was not part of the improved portion of the road designed for vehicular travel. The primary focus was on the location of the alleged *defect*. We stated, "[t]he criterion used by the Legislature was not based on *the class of travelers, but the road on which they travel.*" *Id.* at 341 (emphasis added).

In *Scheurman v Dep't of Transportation*, 434 Mich 619; 456 NW2d 66 (1990), we focused on where the alleged *defect* occurred. We stated that the failure to install lighting along a state trunk line did not subject the government to potential liability because "the physical structure of the lights falls outside the trav-

eled or paved portion of the roadbed actually designed for public vehicular travel." *Id.* at 633.

In *Gregg v State Hwy Dep't*, 435 Mich 307; 458 NW2d 619 (1990), we again focused on where the alleged *defect* occurred. In that case, the plaintiff was injured when his bicycle struck a pothole located within two white lines demarking a bicycle path within the paved portion of the road and preceding its paved shoulder. We held that the plaintiff, even though a bicyclist and not a motorist, was a member of the class of travelers to be protected, *and* the bicycle path was part of the improved portion of the road designed for vehicular travel. *Id.* at 312.

In *Chaney v Transportation Dep't*, 447 Mich 145; 523 NW2d 762 (1994), again we focused on the location of the *defect*. We held that because a bridge railing was not physically located within the improved portion of the highway designed for vehicular travel, and because it did not integrally and directly affect safe travel on the improved portion of the highway, the highway exception was not applicable.

In *Mason, supra,* we focused on the location of the alleged defect. In that case, a school boy ran into the street while traversing a crosswalk and was struck by a car whose driver ran a red light. Plaintiff sued, alleging that the county road commission failed to install appropriate safety devices, including school warning signs. This Court, in an opinion written by Justice BOYLE, recognized that the statute excludes " 'sidewalks, crosswalks, and other installations *from the duty of maintenance and repair . . . .*' " *Mason,* 447 Mich 137, quoting *Roy, supra* at 336 (emphasis added). We reaffirmed this by stating that "[t]he highway exception specifically excepts the state and

counties from liability *for defects in cross-
walks . . . ." Id.* at 135 (emphasis added). This
Court's focus was clearly on the location of the
*defect,* rather than the location of the injury. The gov-
ernment was immune from liability not because
*plaintiff* was in a crosswalk when she was injured,
but because the *defect* was outside the improved por-
tion of the road or in a crosswalk.

It is clear from the statutory language and our case
law that the statute defines the government's duty by
telling it what portions of the road it must maintain
and repair, not to whom it owes a duty or where the
injury occurs.[1]

Finally, I question the prudence of the lead opin-
ion's holding as it relates to jaywalkers. While it is
true that this state recognizes comparative negli-
gence, a jaywalker would be permitted to recover
under the same facts as this case, whereas someone
lawfully crossing at a crosswalk would be completely
barred from recovery. From a public policy stand-
point, it seems obvious to me that the focus should
not be on where the alleged injury occurred. Rather,
the focus is properly on where the alleged defect was,

---

[1] The lead opinion asserts that "the dissent does not cite a single case
to support its contention." *Ante* at 654, n 14. The claim, apparently, is that,
because I have not cited a case in which a pedestrian was allowed to
recover *because of* a design defect in the improved portion of the road,
there is no support for my holding. However, both the lead opinion and
this opinion cite cases in which pedestrians were allowed to recover. See
*Gregg, supra.* The lead opinion has also generously cited cases dating
back to 1886 in which this Court held that a design defect is actionable.
*Ante* at 654, n 14. This Court has already held both that a pedestrian may
recover *and* that a design defect is actionable. The *only* difference in this
case is that a pedestrian is allowed to recover *because of* a design defect
in the improved portion of the road designed for vehicular travel.

at least, according to prior case law and the express terms of the statute.

For the reasons stated, I respectfully dissent from the decision of the lead opinion in *Brown*.[2]

As to the *Suttles* case, I concur in the result reached by the lead opinion.

BRICKLEY and KELLY, JJ., concurred with CAVANAGH, J.

---

[2] Despite the fact that a majority of justices agree with my analysis that the location of the claimed defect controls over the location of the injury, it is unfortunate that plaintiff in *Brown* is precluded from litigating her case for the mere fact that a single justice fails to acknowledge this Court's long line of cases allowing recovery for a design defect, as noted even by the lead opinion. *Ante* at 654, n 14, citing cases allowing recovery for a design defect dating as far back as 1886.